## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEANN MILES,
             *Plaintiff,*

vs.

                              Case No. 16-01141-EFM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
             *Defendant.*

### MEMORANDUM AND ORDER

Plaintiff LeAnn Miles seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income under Title XVI of the Social Security Act. Miles alleges that her claim must be remanded for rehearing because the Administrative Law Judge ("ALJ") committed reversible error in making the residual functional capacity ("RFC") determination. Finding that the Commissioner's decision was supported by substantial evidence and substantially comported with proper legal procedure, the Court affirms.

### I.      Factual and Procedural Background

**A.      Medical History**

Miles's relevant medical issues date back to August 19, 2011, when she was seen at Valeo Behavioral Health Care and was diagnosed with bipolar disorder, obsessive compulsive disorder ("OCD"), and generalized anxiety disorder. She was instructed to discontinue

mirtazapine, and was given a prescription for Ambien and lithium.  Miles returned in September and December, reporting that her anxiety and OCD issues were improving.

On January 3, 2012, she checked in to Valeo's Crisis Services because she was having increased anxiety and panic attacks.  She explained that her anxiety caused her to experience increased breathing, heart palpitations, sweaty palms, and a fear of leaving her house.  She was diagnosed with bipolar with manic symptoms, OCD and generalized anxiety, and was provided a prescription for clonazepam in addition to her other medications.

On June 19, 2012, Miles returned to Valeo where she reported that she had been experiencing increased depression, anxiety, insomnia, and tearfulness.  Due to recent financial difficulties, she had discontinued her medications.  She was again diagnosed with bipolar disorder, OCD, and generalized anxiety, and was instructed to restart her prior medications.

Miles next returned to Valeo on October 11, 2012.  Again, she reported that she was unable to afford her medications and had since been having mood swings, anxiety, and insomnia. This time she was instructed to discontinue all prior medications and was started on a saphris regimen.

After applying for Supplemental Security Income, Miles was referred to Jason Neufeld, Ph.D., for a psychological examination.  Dr. Neufeld met with Miles on July 24, 2014.  Miles reported having life-long psychological distress that had been gradually worsening over time. She explained: "I get overwhelmed by the thought of having to be somewhere at a certain time," "I just get real anxious," "I tend to isolate myself," noting a tendency to become easily "frustrated and overwhelmed," and "I don't want to go anywhere or be around anyone."  Miles reported that she experiences sleep difficulties, and that she generally feels tired and rather depressed.  She also reported uncontrolled tearfulness, poor energy and motivation, a decreased

self-esteem, as well as difficulty thinking and concentrating.  Upon repeated prompting, Miles ultimately noted that she "generally simply stays inside her home and watches TV."

Regarding her recent functioning, Miles reported that she has been residing in an apartment by herself since 2011.  She denied any difficulty in performing daily tasks of self-care, such as dressing, bathing, and brushing her teeth.  She acknowledged that she completes all routine household chores, but noted that she tends to "become easily overwhelmed" with such tasks.  Miles explained that she spends excessive time on certain tasks due to her obsessive-compulsive symptoms (e.g., maintaining strict organization of shelves).

Dr. Neufeld noted that Miles "remained highly anxious throughout the evaluation, and she seemed to quickly and easily become overwhelmed with exam tasks."  Additionally, Miles "evidenced uncontrolled tearfulness several minutes into the exam in apparent response to feeling overwhelmed, and she remained tearful throughout the remainder of the exam."

Based on Miles's clinical presentation, reported history of recent functioning, and reported history of symptoms, Dr. Neufeld opined "that she would likely experience significant occupational interference due to psychological distress."  Continuing, Dr. Neufeld wrote:

> Despite a likelihood of some such interference, the claimant's performance on the mental status exam did not confirm that current distress would entirely preclude her ability to adequately 1) understand, remember, and carry out at least simple instructions; and to 2) sustain at least minimal concentration, persistence, and pace in a work setting.  Her clinical presentation at the time of the exam suggested that she would likely experience significant difficulty in terms of 3) maintaining appropriate social interactions with coworkers, supervisors, and the general public, although she may retain the capacity to function in a work environment with very limited social interaction.  The claimant's report of difficulty leaving the home reflects an additional significant barrier to employment, and her ability to maintain adequate functioning on an ongoing basis over the course of a typical 40-hour work week remained questionable given the nature and severity of distress observed at the time of the exam.

Dr. Neufeld opined that Miles had a "marked" inability to interact appropriately with the public and with co-workers, and a "marked" inability to respond appropriately to usual work situations and to changes in a routine work setting. He opined that Miles had a "moderate" ability to interact appropriately with supervisors.

Ultimately, Dr. Neufeld diagnosed generalized anxiety disorder, panic disorder with agoraphobia, OCD, major depressive disorder (moderate to severe), and polysubstance dependence (sustained full remission).

**B.     Hearing Testimony**

Miles initially applied for Supplemental Security Income on November 16, 2012. She was denied on March 20, 2013, and again upon reconsideration on June 4, 2013. Miles filed a Request for Hearing on July 12, 2013. Miles appeared and testified at the hearing held on November 24, 2014. Her testimony was largely consistent with her statements contained in Dr. Neufeld's report. When asked why she cannot work, she testified: "I get overwhelmed easily, I have extreme anxiety, I have issues with being able to leave my home sometimes or being able to enter into a business." She acknowledged that she used to take prescription medication for anxiety, bipolar disorder, insomnia and OCD, but that she could no longer afford these medications. However, she stated that while on the medications, she did "[n]ot really" notice a difference.

Miles also testified that she spent most of her days isolated at home due to her anxiety, and that twice a week she did not even have the desire to get out of bed. She stated that she did not have many friends, and that she did not visit with anyone as a result of her anxiety. Additionally, she testified that she did not have a driver's license and that her father would usually get her groceries or other items.

-4-

The ALJ then heard testimony from a vocational expert ("VE").  The ALJ proposed a hypothetical individual who could perform work at all exertional levels, but that work is limited in that the individual is able to understand, carry out, and remember only simple, routine, repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes; the individual should have no interaction with the public; they can be around coworkers, but with only brief incidental interaction with those coworkers; no tandem tasks; furthermore, the work is isolated, meaning the supervisor would check on the individual's work no more than occasionally.  The VE testified that an individual with these limitations could perform work as a boring machine tender, riveting machine operator, or dipping machine operator.

On cross examination, Miles's attorney proposed a hypothetical individual who had a substantial loss in the ability to appropriately interact with the public and coworkers.  The attorney defined "substantial" as an individual who would occasionally exhibit behavioral extremes that would cause coworkers to be off-task 15% of the time on a chronic basis.  The VE testified that an individual with these limitations would not be able to maintain competitive employment.

The attorney then proposed a second hypothetical of an individual with the same limitations as in the first hypothetical, but in addition would not be able to consistently react appropriately to usual work situations and changes in the work setting so that occasionally through the workweek they would decompensate and not be able to handle general work situations.  The attorney clarified that the individual would act out, or be disruptive, or just shut down and not be able to function for that period.  The VE testified that an individual with these limitations would be precluded from competitive employment.

Finally, the attorney proposed a hypothetical of an individual who was not able to consistently perform forty hours of work a week because of their psychological symptoms. The VE testified that an individual with this limitation would not be able to maintain competitive employment.

**C.     The ALJ's Decision**

The ALJ issued an unfavorable decision on December 15, 2014. In the decision, the ALJ determined Miles had not engaged in substantial gainful activity since August 22, 2012. Next, the ALJ determined that Miles suffered from severe impairments of anxiety, panic disorder with agoraphobia, OCD, depression, and polysubstance dependence in remission. However, the ALJ concluded that Miles did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations.

While the ALJ did not conclude that any of Miles's conditions met or equaled a listed impairment, he did note some limitations. Specifically, the ALJ found that Miles retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember and carry out only simple, routine, repetitive tasks involving only simple, work related decisions, with few, if any, workplace changes. The claimant is also limited to jobs that do not require any interaction with the public. She can be around coworkers throughout the day, but with only brief, incidental interaction with those coworkers and no tandem tasks. In addition, she is limited to work that is isolated, which I define as having the supervisor check on the work no more than occasionally.

In reaching this conclusion, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."

The primary opinion evidence in the record was Dr. Neufeld's report. The ALJ gave "some weight to Dr. Neufeld's opinions, as they are generally consistent with the other medical

evidence of record and his own findings." The ALJ did not specify what opinions or findings of Dr. Neufeld that he accepted. However, the ALJ specifically rejected two of Dr. Neufeld's findings.

First, the ALJ gave little weight to Dr. Neufeld's opinion that Miles's ability to maintain adequate function on an ongoing basis was questionable. The ALJ justified his decision, stating that "the Valeo records indicate that the claimant was doing better when she was on medications."[1] Additionally, "the claimant testified that she was living by herself until about one month before the hearing, and in her reports she indicated that she could cook her own meals and perform all her own household chores." "This suggests," the ALJ concluded, "that the claimant is capable of maintaining adequate functioning on an ongoing basis."

Second, the ALJ gave little weight to Dr. Neufeld's opinion that Miles has marked inability to respond to usual work situations. The ALJ reasoned that "this is not consistent with her activities of daily living, such as cooking and performing household chores."

---

[1] The "Valeo records" refer to a "Client Psychiatric Progress Note" completed by Yong Cork, APRN on June 19, 2012. The report states that Miles "went without meds, became increasing [sic] depressed, anxious, insomnic and tearful," and that Miles "was doing very well on meds" before running out. However, Miles points out that there were five Progress Notes compiled before this one.

A Progress Note completed on August 19, 2011 states that Miles was "having some breakthrough anxiety, irritability, and initial insomnia." She was prescribed Ambien, instructed to discontinue her use of Mirtazapine, and to continue taking Lithium at her current dosage. A Progress Note completed on September 26, 2011 states that Miles was having "residual mild obsessions and compulsions," but that Miles reported "Things are going good." Miles reported that she had not been having panic attacks. She was instructed to continue "all meds as ordered." A December 16, 2011 Progress Note shows that Miles was "doing pretty ok," felt "stable with current meds," and her mood and anxiety were "under fairly good control."

On January 3, 2012, Miles's Progress Note states that she had been having anxiety attacks. She stated, "I can't even leave my house to go to [the] grocery store," and reported that she had missed two weeks of computer classes due to her anxiety. Miles was prescribed Clonazepam, and instructed to "continue with other meds." On March 9, 2012, the Progress Note states that Miles had "stopped taking meds" due to increased menstrual bleeding." Miles claimed that she was doing "pretty ok" without her medication.

The ALJ concluded that Miles's medically determinable impairments could reasonably be expected to cause the symptoms she alleged.  However, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."

Then, relying on vocational expert testimony, the ALJ concluded Miles had no past relevant work, but that she could perform work as a boring machine tender, riveting machine operator, or dipping machine operator.

Given this unfavorable result, Miles filed a Request for Review of Hearing Decision with the Appeals Council on January 28, 2015.  Her request was denied on March 22, 2016.  As such, the ALJ's December 2014 decision became the final decision of the Commissioner.  On May 20, 2016, Miles filed a Complaint in this Court seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration.  Given Miles's exhaustion of all administrative remedies, her claim is now ripe for review before this Court.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[2]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

conclusion."[4]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she "can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to . . . last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether

---

[4] *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

the severity of those severe impairments meets or equals a designated list of impairments.[10]  If

the impairment does not meet or equal one of these designated impairments, the ALJ must then

determine the claimant's RFC, which is the claimant's ability "to do physical and mental work

activities on a sustained basis despite limitations from [his] impairments."[11]

Upon assessing the claimant's RFC, the ALJ moves on to steps four and five, which

require the ALJ to determine whether the claimant can either perform her past relevant work or

whether she can generally perform other work that exists in the national economy, respectively.[12]

The claimant bears the burden in steps one through four to prove a disability that prevents

performance of her past relevant work.[13]  The burden then shifts to the Commissioner at step five

to show that, despite her alleged impairments, the claimant can perform other work in the

national economy.[14]

### III.    Analysis

Overall, the ALJ gave "some weight to Dr. Neufeld's opinions, as they are generally

consistent with the other medical evidence of record and his own findings."  But Miles argues

that the ALJ committed reversible error by discounting "the disabling parts of Dr. Neufeld's

opinion."  Specifically, the ALJ discounted two of Dr. Neufeld's opinions: (1) that Miles would

have a questionable ability to maintain adequate functioning on an ongoing basis over the course

of a typical 40-hour work week and (2) would have a marked limitation in the ability to respond

---

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

appropriately to usual work situations and to changes in a routine work setting.  Miles contends

that the ALJ's decision to discount these two opinions is not supported by substantial evidence.

**A.  The ALJ Properly Afforded Little Weight to Dr. Neufeld's Opinion that Miles's Ability to Maintain Adequate Functioning on an Ongoing Basis Over the Course of a Typical 40-hour Work Week Remained Questionable**

The Court now turns to the first opinion Miles takes issue with.  In his opinion, Dr.

Neufeld wrote that Miles's "ability to maintain adequate functioning on an ongoing basis over

the course of a typical 40-hour work week remained questionable given the nature and severity

of distress observed at the time of the exam."  The ALJ afforded "little" weight to this particular

opinion.  The ALJ explained:

> I give little to [Dr. Neufeld's] opinion that the claimant's ability to maintain adequate functioning on an ongoing basis is questionable, as the Valeo records indicate that the claimant was doing better when she was on medication. Furthermore, the claimant testified that she was living by herself until about one month before the hearing, and in her reports she indicated that she could cook her own meals and perform all her own household chores.  This suggests that the claimant is capable of maintaining adequate functioning on an ongoing basis.

Essentially, Miles now argues that because Dr. Neufeld concluded that it was questionable

whether Miles could maintain adequate functioning on an ongoing basis, the RFC should have

reflected that Miles was unable to maintain employment.  Miles contends that to do otherwise

would be to "pick and choose" from within an opinion, contrary to the procedure outlined in

*Robinson v. Barnhart*.[15]

---

[15] 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)).

This argument, however, would force the Court to reweigh the evidence.[16]  Dr. Neufeld was not a treating physician entitled to controlling weight.  The ALJ nonetheless decided to give his opinion some weight, but did not adopt it unreservedly.  Instead, the ALJ concluded that Miles could maintain adequate functioning on an ongoing basis over the course of a typical 40-hour work week at certain jobs identified by the VE.  The ALJ committed no legal errors when he decided, in light of the entire record, that Miles was capable of maintaining employment while taking her prescribed medications.

As the ALJ cited, the record reflects that Miles was doing better when she was on medication.  The Court agrees with this assessment, as it is supported by substantial evidence. Miles began treatment at Valeo in August 2011, when she reported "some breakthrough anxiety, irritability, and initial insomnia."  She was prescribed Ambien, instructed to discontinue her use of Mirtazapine, and to continue taking Lithium at her current dose.  She returned the following month because of "residual mild obsessions and compulsions," but reported that "Things are going good," and that she had not been having panic attacks.  The report also notes that Miles had been "working at the Holiday Inn Express for over 1 month in housekeeping . . . [with] perfect attendance," and Miles was "pleased with herself."  Miles's next visit came in December 2011, where she reported that she was "doing pretty ok," felt "stable with current meds," and that her mood and anxiety were "under fairly good control."

In March 2012, Miles reported that she had stopped taking her medications.  Miles did not return to Valeo until June 2012, when she reported: "I've been off of meds for last 2-3 months because I couldn't afford them.  I am a mess."  The June report states that Miles had

---

[16] *See Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (holding that the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency.").

become increasingly depressed, anxious, and tearful, and that Miles had been unable to work or sustain a job. The treatment provider specifically noted that Miles "was doing very well on meds before [Miles ran] out."

After reviewing the Valeo records, the Court concludes that the ALJ's assertion that Miles "was doing better when she was on medication" is supported by substantial evidence. Miles visited Valeo four times while she was taking her medications. Of those four visits, only one report (from January 3, 2012), reflected that she was having increased anxiety attacks. The other three reports generally reflect that Miles was functioning well while she was taking her medications. However, Miles's visits to Valeo after she discontinued her medications tell a different story. In June 2012, Miles had become increasingly depressed, anxious, tearful, stating that she was "a mess." In her next visit, more than three months later, Miles noted that she had lost her job. Viewed together, the ALJ reasonably concluded that Miles was doing better while on medication.

Essentially, the ALJ chose to adopt the portions of Dr. Neufeld's opinion that were supported by the entire record and discount a portion that was inconsistent with the record. This does not amount to legal error.[17]

B. **The ALJ Properly Afforded Little Weight to Dr. Neufeld's Opinion that Miles Has a Marked Limitation in the Ability to Respond Appropriately to Usual Work Situations**

Miles next argues that the ALJ gave too little weight to Dr. Neufeld's opinion regarding Miles's ability to respond to usual work situations. In his report, Dr. Neufeld opined that Miles had a "marked" ability to respond appropriately to usual work situations and to changes in a

---

[17] *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

routine work setting.  The ALJ afforded this opinion little weight, reasoning that "this is not consistent with her activities of daily living, such as cooking and performing household chores."

Indeed, Miles told Dr. Neufeld that she had no difficulty maintaining her home, caring for herself, or performing household chores.  Miles argues that her ability to perform activities of daily living does not mean that she was able to work.  Instead, she contends, the ALJ erred by failing to consider her ability to function in a work setting.  However, in this particular instance the ALJ was merely weighing Dr. Neufeld's opinion by comparing Dr. Neufeld's conclusions to other evidence in the record.  This was not legal error either.

The Tenth Circuit's decision in *Newbold v. Colvin*[18] is particularly instructive.  In *Newbold*, the claimant argued that the ALJ erroneously rejected a treating physician's opinion that she was disabled.[19]  The treating physician opined that the claimant had "an extremely limited residual functional capacity, she can work no more than two to three hours during an 8-hour workday and she would miss work more than four days per month due to her impairments."[20]  The ALJ found this assessment to be "inconsistent with [the claimant's] reported activities of daily living."[21]  Specifically, the claimant "has been able to independently . . . car[e] for her own personal needs; [perform] household chores, i.e., dishes, vacuuming; cooking; texting friends; using a computer; driving; grocery shopping; reading; watching television; visiting with friends . . . ."[22]  Thus, the ALJ determined the treating physician's

---

[18] 718 F.3d 1257 (10th Cir. 2013).

[19] *Id.* at 1265.

[20] *Id.* at 1266.

[21] *Id.*

[22] *Id.* (citing 20 C.F.R. § 404.1527(c)(4) (stating ALJ must consider whether opinion is consistent "with the record as a whole.")).

opinion was not controlling, as he ascribed it "diminished weight."[23]   On appeal, the Tenth Circuit found no legal errors, noting that "the foregoing examples cited by the ALJ adequately explain his reasoning."[24]   Accordingly, the Court concluded that substantial evidence supported the ALJ's decision to afford the treating physician's opinion diminished weight.[25]

Similarly, in this case, Dr. Neufeld indicated that Miles could possibly be disabled in his opinion.  However, the ALJ discounted Dr. Neufeld's opinion because it was "not consistent with her activities of daily living, such as cooking and performing household chores."  As demonstrated by *Newbold*, this is an appropriate factor for the ALJ's consideration. Accordingly, the foregoing examples cited by the ALJ adequately explain his reasoning to discount this portion of Dr. Neufeld's opinion.[26]   The Court therefore concludes that substantial evidence supports the ALJ's decision to afford this portion of Dr. Neufeld's opinion little weight.

## C.  The ALJ Applied the Proper Legal Standards

The ALJ is required to evaluate every medical opinion, assign weight to each opinion, and discuss the weight given to each.[27]   The regulations direct the ALJ to consider all of the factors set out in 20 C.F.R. § 404.1527(a) to (d) in deciding the weight to give any medical opinion.  If after considering these factors, the ALJ discounts a medical opinion, the ALJ must

---

[23] *Id.*

[24] *Id.* (citing *Watkins*, 350 F.3d at 1301).

[25] *Id.*

[26] *See Watkins*, 350 F.3d at 1301 (requiring ALJ to give "specific, legitimate reasons" when discounting a medical opinion) (internal quotation marks omitted).

[27] *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii).

"provide specific, legitimate reasons for rejecting it."[28]  However, the ALJ is not entitled to "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."[29]

Under the required framework, the ALJ gave proper consideration to Dr. Neufeld's opinion.  He considered the required factors, specifically discussing the consistency of Dr. Neufeld's opinion with other evidence in the record.  Although the ALJ failed to explain each factor in evaluating Dr. Neufeld's opinion, the ALJ was not required to engage in a factor-by-factor discussion.[30]  The ALJ also provided specific, legitimate reasons for rejecting the portions of Dr. Neufeld's opinion that were not consistent with other evidence in the record.  Furthermore, the ALJ did not "pick and choose" through Dr. Neufeld's opinion, taking only the parts that are favorable to a finding of nondisability.  Rather, the ALJ chose to adopt the portions of Dr. Neufeld's opinion that were supported by the entire record and discount those portions inconsistent with the record.  This was not legal error.

## IV.    Conclusion

In sum, the Court rejects each of the arguments Miles has asserted.  The ALJ gave Dr. Neufeld's opinion some weight but did not adopt it without reservations or in its entirety.  Instead, he adopted the portions of Dr. Neufeld's opinion that were supported by the entire record and discounted the portions that were inconsistent with the entire record.  The ALJ's

---

[28] *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)).

[29] *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012) (quoting *Chapo*, 682 F.3d at 1292); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

[30] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.").

evaluation of Dr. Neufeld's opinion was therefore supported by substantial evidence.   And finally, the Court finds no error in the ALJ's step four determination.   The Court concludes that the evidence in the record supports the ALJ's decision and the ALJ substantially comported with all procedural requirements.   Miles was therefore afforded a fair hearing and proper reconsideration of her claim for Supplemental Security Income.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Miles's claim for social security benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 17th day of January, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE